UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| QUINTIN D. JACKSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JULIA L. MONK, )<br>GRACE A. LEWIS, )<br>DONALD EMERSON, )<br>WEXFORD OF INDIANA, LLC, )<br>)<br>Defendants. ) | No. 2:19-cv-00171-JMS-DLP |

**Entry Granting Motion for Summary Judgment
and Directing Entry of Final Judgment**

Quintin D. Jackson filed this action on April 10, 2019. His second amended complaint, dkt [30], alleges that he tore his Achilles tendon on May 25, 2017, while playing basketball in the gym at the Heritage Trails Correctional Facility. He alleges defendants July L. Monk and Grace A. Lewis denied him medical care and treatment for his known injury until November 10, 2017. *See* dkt 40 (Screening Entry). In addition, defendant Wexford of Indiana, LLC, is allegedly liable for its policy of requiring approval from the Central Office before sending inmates to the hospital for serious injuries and the Warden is allegedly liable because he knew of the problem and had the power to remedy the problem but failed to take any action. *Id.*

Defendants Monk and Lewis sought summary judgment arguing that Mr. Hayden failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit. Dkt. 20. Given the filing of the amended complaint and the addition of new defendants, all parties were given the opportunity to supplement the summary judgment record. *See* dkt. 40 at p. 3. Mr. Jackson was specifically given

the opportunity to supplement his response in opposition to summary judgment by setting forth what he did to complete the grievance process prior to filing this action or, in the alternative, what barriers made the grievance process unavailable to him. *Id.* Mr. Jackson was subsequently released from prison and declined to file any supplement. Dkt. 53.

For the reasons explained below, the motion for summary judgment as to the affirmative defense of exhaustion, dkt. [20], is **granted** in favor of all defendants.

## I. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" designated evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-movant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "The non-movant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

## II. Discussion

A. *Undisputed Facts*

At all times relevant to his Complaint, Mr. Jackson was confined by the IDOC at Heritage Trail Correctional Facility. He was injured on May 25, 2017. At that time the IDOC had an Offender Grievance Process, identified as IDOC Offender Grievance Policy 00-02-301, in place. This policy was effective April 2015 through October 2017. Dkt. 44-2 (hereinafter "2015 Grievance Policy"). In October 2017, the grievance policy was amended and on November 10, 2017, Mr. Jackson received the treatment he required. Dkts. 44-1 (hereinafter "2017 Grievance Policy"). Both policies are intended to permit inmates to resolve concerns and complaints relating to their conditions of confinement prior to filing suit in court.

The grievance procedures at the Heritage Trail Correctional Facility are noted in the inmate handbook and are provided to inmates upon their arrival at the facility. The Grievance Process is also available in the law library.

<u>The 2015 Grievance Process consists of three steps.</u>

(i) An informal attempt to solve a problem or address a concern on State Form 52897, titled: "Offender Complaint-Informal Process Level." This form must be returned to the Offender Grievance Specialists within 10 days.

(ii) If the prisoner's complaint is not resolved by the informal process, he may submit State Form 45471, titled "Offender Grievance," outlining the problem or concern and other supporting information, to the Offender Grievance Specialist within 20 business days from the date of the incident giving rise to the complaint. The Offender Grievance Specialist has fifteen business days to respond. If the prisoner is dissatisfied with the response, he may file an appeal.

  (iii)  The prisoner may submit a written appeal of the response by indicating that he is not satisfied with the response on the Formal Grievance Form. The Department Offender Grievance Manager then provides a final decision.

Dkt 44-2 at pgs. 3, 10, 19. State Form 52897, Offender Complaint-Informal Process Level is a document that is a part of the official record of the grievance process. This informal complaint is to be scanned into the OGRE system. *Id.* at p. 16.

  <u>The 2017 Grievance Process consists of four steps.</u>

  First the offender must attempt to resolve the grievance informally through officials at the facility. The informal grievance process shall be done via "to/from" correspondence or "Request for Interview." Dkt. 44-1 at p. 8-9.

  If the informal grievance process is unsuccessful, the offender must file a Formal Grievance on State Form 45471 and submit it to the Offender Grievance Specialist. The formal grievance must be submitted within ten business days from the date of the incident giving rise to the complaint or concern. *Id.* at p. 9. The Grievance Specialist is required to provide a response within five business days. *Id.*

  If the response does not resolve the problem to the satisfaction of the prisoner, the prisoner must appeal the Grievance Specialist's decision by submitting a Level 1 Grievance Appeal to the Warden of the facility on State Form 45473. *Id.* at 12. The Warden or his designee will then provide a response. *Id.*

  If the problem still has not been resolved to the satisfaction of the offender, the offender must appeal the Warden's decision to the Department Offender Grievance Manager by checking the "disagree" box on State Form 45473. *Id.* The Grievance Specialist will submit a Level 2

Grievance Appeal to the Department Grievance Manager. The decision of the Department Offender Grievance Manager is final.

Successful exhaustion of the grievance procedure by an offender includes timely pursuing each step, or level, of the informal, formal, and appeal process. An offender must also use the proper grievance forms in order to exhaust successfully and must file timely each grievance within the timeframe outlined by the administrative procedures of the Indiana Department of Corrections.

The Indiana Department of Correction's grievance records reflect that that Mr. Jackson never successfully filed any Formal Grievance or Appeal at the Heritage Trails Correctional Facility or the Putnamville Correctional Facility where he was subsequently transferred. Dkt. 22-1 at 3.

### B. *Exhaustion*

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). It is the defendant's burden to establish that the administrative process was available to Mr. Jackson. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some

orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (*quoting Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). The PLRA's exhaustion requirement is not subject to either waiver by a court or futility or inadequacy exceptions. *Booth v. Churner,* 532 U.S. 731, 741, n.6 (2001); *McCarthy v. Madigan,* 503 U.S. 140, 112 S. Ct. 1081 (1992) ("Where Congress specifically mandates, exhaustion is required.").

C.  *Discussion*

The defendants argue that this action should be dismissed because Mr. Jackson failed to avail himself of all administrative remedies before filing this civil action. Mr. Jackson's response in opposition to summary judgment filed November 19, 2019, asserts that between September and December 2019, he started the informal and formal grievance process with his case worker. But this claim does not make sense because the injury occurred more than two years earlier in May of 2017, and December 2019, was still in the future. Dkt. 33. Mr. Jackson further explained that the grievance responses he received were lost during shakedowns at Heritage Trails Correctional Facility. Dkt. 33. He did not provide any other details or testify that he completed any of the specific steps in the exhaustion process.

Mr. Jackson also testified that he needed access to his confidential prison file in order to access his grievances related to this case. Dkts. 31, 34, and 36. Given this testimony, Warden Emerson was ordered to produce any grievances or papers that appear in Mr. Jackson's

confidential offender packet to assist the plaintiff in supplementing his response in opposition to summary judgment by setting forth what he did to complete the grievance process prior to filing this action or, in the alterative, what barriers made the grievance process unavailable to him. Dkt. 50. In response, Warden Emerson stated that he is no longer the Warden of the Heritage Trails Correctional Facility, but that he contacted the compliance administrator who was able to confirm that because Mr. Jackson had been released there was no way for the facility to confirm whether any informal grievance or rejected grievances existed. However, the administrator confirmed that no formal grievances were accepted and filed in the OGRE grievance management system.

Mr. Jackson was then given additional time to supplement his response in opposition to summary judgment by setting forth what he did to complete the grievance process prior to filing this action, or in the alternative, what barriers made the grievance process unavailable to him. No response was provided. Mr. Jackson's general assertion that he made untimely attempts to grieve the treatment of his Achilles injury, his testimony that he needed information that is not currently available, and his claim that items were lost during a shakedown is insufficient to defeat summary judgment. He was unable to "come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton,* 534 F.3d at 677. Under these circumstances there is no definite, competent evidence to call into question the defendants' evidence that there were available administrative remedies that Mr. Jackson failed to exhaust prior to filing this civil action.

The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that Mr. Jackson's action should not have been brought and must now be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

### III.  Conclusion

The defendants' motion for summary judgment, dkt [20], is **granted**. Judgment in favor of all defendants' consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 5/1/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

QUINTIN D. JACKSON
1919 S. Nebraska St.
Marion, IN 46953

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com

Angela Marie Rinehart
KATZ  KORIN CUNNINGHAM, P.C.
arinehart@kkclegal.com

Maritza K. Webb
KATZ  KORIN CUNNINGHAM, P.C.
mwebb@kkclegal.com